Submitted on record and briefs April 6, affirmed May 7, petition
for rehearing allowed June 9, argued on rehearing September 21,
former opinion adhered to November 16, 1970. Petition
for review denied December 30, 1970

## STATE OF OREGON, *Respondent, v.*
## ROBERT LEROY SUNDERLAND, *Appellant.*

468 P2d 900
476 P2d 563

[ 1 ]

Gary D. Babcock, Public Defender, Salem, for appellant.

Lee Johnson, Attorney General, and Jacob B. Tanzer, Solicitor General, Salem, for respondent.

Before SCHWAB, Chief Judge, and LANGTRY and FOLEY, Judges.

LANGTRY, J.

Defendant was convicted in a trial by the court of rape of his 16-year-old daughter. ORS 163.220.

Assignments of error on appeal are: (1) that there was delay in taking him before a magistrate after he was arrested, and that, consequently, oral and written admissions made by him should have been excluded; and (2) that acquittal should have been ordered because there was insufficient evidence of force in the alleged rape.

Defendant was arrested on a warrant during the

night of December 31, 1968. He was held in the Washington County jail until the morning of January 2, and during the interval was afforded normal opportunity to make telephone calls and contact counsel if he wished to do so. He was taken to the detectives' office in the same building as the jail at 9:25 a.m. on January 2 and there questioned by two detectives for about one and three-fourths hours. He was then taken before a district judge in the same building. He was advised by the judge of the charge against him and of his rights, and taken back to the detectives' office where he wrote a statement which essentially repeated what he had previously said. The defendant was fully advised of his rights by the detectives before each session. In the statements he gave, he admitted sexual relations with his daughter, but he denied use of force. On trial, his testimony was substantially the same as his oral and written statements. During the state's case, defendant's counsel objected to receipt in evidence of the oral and written statements on several grounds, only one of which is pertinent here, namely, that he was not promptly taken before a magistrate as required by ORS 133.550.

 Defendant asserts that the statements are inadmissible by reason of the alleged violation of ORS 133.-550, and also the Fourteenth Amendment to the United States Constitution, and Oregon Constitution, Art I, § 11. The substance of the contention is that the *McNabb-Mallory* rule applies in Oregon since the 1963 enactment of ORS 133.550. This rule does not apply to states, but is applicable to proceedings in federal courts.[1]

---

[1] The *McNabb-Mallory* rule is the federal rule pronounced in McNabb v. United States, 318 US 332, 63 S Ct 608, 87 L Ed 819

ORS 133.550 provides:

"The defendant shall in all cases be taken before the magistrate without delay."

ORS 136.545 provides that if a magistrate fails to give information required by ORS 133.610 when the defendant is taken before him, any evidence obtained directly or indirectly as a result of that failure is inadmissible.

Interpreting all of the above statutory provisions in 1965, the Oregon Supreme Court in *State v. Allen*, 239 Or 524, 529, 398 P2d 477 (1965), said:

"* * * The state must take an arrested person promptly before a magistrate as is demanded by ORS 133.550 so that his rights may be explained to him by an impartial judicial officer. *In the event that conditions make it impossible to comply with ORS 133.550 prior to taking such statements as the prisoner may want to give them,* then the police must see to it that they explain his rights to him in a manner consistent with our recent decision in *State v. Neely*, supra [239 Or 487, 395 P2d 557, 398 P2d 482 (1964)]." (Emphasis supplied.)

Despite the extended and vigorous argument in the brief filed by the Public Defender on defendant's be-

---

(1942), and Mallory v. United States, 354 US 449, 77 S Ct 1356, 1 L Ed 2d 1479 (1957), which is designed to eliminate possible police oppression by providing an arbitrary and automatic remedy for a defendant who can show that he has been subjected to unlawful delay in appearing before a magistrate. It prohibits the use in evidence of any statements obtained from the defendant by officers deriving out of unreasonable delay in taking the defendant before a magistrate. State v. Freeman, 232 Or 267, 374 P2d 453 (1962), cert den 373 US 919, 83 S Ct 1310, 10 L Ed 2d 418 (1963). Before enactment of ORS 133.550 in its present form by the Oregon legislature in 1963, the Oregon Supreme Court held the rule inapplicable in this state. State v. Shipley, 232 Or 354, 375 P2d 237 (1962), cert den 374 US 811, 83 S Ct 1701, 10 L Ed 2d 1034 (1963).

half, we do not believe that the statutory changes of 1963 or recent federal decisions cited have made the prophylaxis of the *McNabb-Mallory* rule applicable in this case. As we view the present law of Oregon in this regard, our inquiry is whether the officers complied with the requirements of ORS 133.550 and its interpretation which we have quoted from *State v. Allen,* supra. Detective Vallery testified that the defendant was brought to his office at 9:25 a.m. on January 2, and that he was taken to court at 11:15 a.m. No question was asked of Vallery by either attorney or the court about whether the defendant could have been taken to the district court any sooner than he was. Officer Pyle was the other detective. During cross-examination, while defendant's attorney was examining Pyle closely as to how long the defendant had been questioned before being taken to the district court, he answered, "The first session went from—it would be approximately that, *until we could get him into court,* yes." (Emphasis supplied.) The defendant did not testify about the time of court appearance. On the basis of this sketchy evidence, the trial court ruled:

> "* * * [T]he Court does find that he was brought before a magistrate promptly on the next judicial day following his arrest and that objection will also be overruled."

Failure to take the defendant before a magistrate on New Year's Eve or New Year's Day, times when the magistrate would not be expected to be holding preliminary hearings or arraignments, was not a "delay" within the meaning of ORS 133.550.[2] If the court's

---

[2] "The mere fact that there is a delay [in holding a preliminary hearing], even of several days, does not vitiate the proceedings nor invalidate a conviction, where such delay * * * is caused by holidays * * *." 4 Wharton, Criminal Law & Procedure § 1619 (Cum Supp 1970 at p 64, n 14).

business on the morning of January 2 was such that the defendant could have been taken before the district court during the time he spent with the detectives, he should have been taken to the court, and to do otherwise would have been delay which violated the statute.

Obviously, a metropolitan area district court would be busy on the morning of the first court day after the New Year holiday. The only real evidence about any possible delay prior to appearing before a magistrate was that defendant appeared at 11:15 a.m. on January 2, and that was the time when the detective said, "* * * we could get him into Court * * *." We hold that this, under these circumstances, was not delay in violation of the statute.

■ Under the language quoted from *State v. Allen*, 239 Or 524, 398 P2d 477 (1965), the officers were not prohibited from questioning the defendant, in conformance with the rules which apply to such situations, during the interval in which they were waiting to take the defendant into court. The defendant makes no contention that any of his statements were not true, or were involuntary or coerced.

■ With reference to the second assignment of error, that there was insufficient evidence of the element of force requisite to prove rape, we conclude that this was a question for the factfinder. Besides testimony of the victim that she physically resisted and was too tired to resist further, she related threats that her father had made on previous occasions about violence he would use against her mother in the event that the girl reported her father's sexual advances. An example of this testimony is the following:

"Q  You say he threatened to kill your mother. When did he make such a threat if you told?

"A  All the time.

"Q What do you mean by that?

"A Anytime he would get mad or something. He would say remember Bolivar. Or he would get drunk and he would remind us of Bolivar and he said that is what would happen to your mother.

"Q What did he mean by that?

"A It was a calf that he bashed the head in of."

On cross-examination:

"Q How did he happen to kill Bolivar?

"A Smashed its head with a sledge hammer.

"Q Why?

"A Because it was blind."

The defendant testified that Bolivar was a defective calf he killed for and at the request of its owner, and he had no firearm available. He denied the threats. If the girl's testimony is believed, it is obvious that she, in such a family atmosphere, had reason to fear her father. The language of the Oregon Supreme Court in *State of Oregon v. Risen*, 192 Or 557, 562, 235 P2d 764 (1951), is applicable:

"* * * Where submission of a girl is induced 'through the coercion of one whom she is accustomed to obey, such as a parent or one standing in loco parentis,' the law is satisfied with less than a showing of the utmost physical resistance of which she was capable. [Citations omitted.]"

The trial judge, when he rendered his verdict, said:

"* * * but the court feels under the circumstances that there was sufficient force *and coercion* on the part of the defendant to justify the verdict * * *." (Emphasis supplied.)

The judgment is affirmed.

**ON REHEARING**

Argued on rehearing September 21, 1970.

*Gary D. Babcock*, Public Defender, Salem, argued the cause and filed the brief on rehearing for appellant.

*Jacob B. Tanzer*, Solicitor General, Salem, argued the cause on rehearing for respondent. With him on the brief was Lee Johnson, Attorney General, Salem.

Before SCHWAB, Chief Judge, and FOLEY, FORT and BRANCHFIELD, Judges.*

PER CURIAM.

Former opinion of this court adhered to.

---

* Langtry, J., did not participate in this decision.