Argued February 24, affirmed April 7, petition for rehearing
denied May 2, petition for review denied
June 13, 1972

STATE OF OREGON, *Respondent, v.* JOHN LEE
PETITE, whose true name is JOHN LEE
POTEET (No. 71-6C), *Appellant.*

STATE OF OREGON, *Respondent, v.* JOHN LEE
POTEET, also known as JOHN LEE PETITE
(No. 71-6C) (habitual criminal), *Appellant.*

495 P2d 783

*Sam A. McKeen,* Klamath Falls, argued the cause and filed the brief for appellant.

*Walter L. Barrie,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and FORT and THORNTON, Judges.

THORNTON, J.

The defendant was convicted of burglary not in a dwelling under former ORS 164.240 and given a 10-year sentence. In a subsequent enhanced penalty proceeding under former ORS 168.015 et seq, this sentence was vacated and a sentence of 25 years was imposed. Although no error has been assigned with regard to the enhanced penalty proceeding, this proceeding has been consolidated with the burglary conviction for purposes of appeal, since the validity of the enhanced penalty is dependent upon the affirmance of the conviction supporting it.

With regard to his conviction for burglary not in a dwelling, the defendant contends that the trial court erred in (1) denying his motion to suppress evidence obtained by the police through a search of defendant's person; (2) finding that the statements made by defendant at the time of his arrest were voluntarily made; and (3) denying his motion for a judgment of acquittal.

The defendant was arrested while crawling into the window of his room in the Hart Hotel in Klamath Falls on the morning of December 27, 1970, at approximately 4 a.m. He had previously thrown a homemade ladder made out of sheets and a bedspread into the room. As he was pulled into the room a .22 Derringer handgun, two screwdrivers and wirecutters fell out of his pocket. The search of defendant that followed disclosed a flashlight, a Smith and Wesson .38 special revolver and a Smith and Wesson .32 caliber pistol, both loaded, and a jacket. The guns and the jacket were later identified as the property of the Corner Store.

The police had been dispatched to the Hart Hotel to investigate a report from the hotel personnel that

a man was on the roof. The record does not disclose who reported this fact to the hotel personnel. When the officers arrived at the hotel, they began to question the desk clerk but were interrupted by Ivan Lutz. Mr. Lutz told the officers that he had been drinking with the defendant the previous afternoon and that the defendant told him he was going to "rob" the Corner Store; that later in the afternoon the defendant had asked him if he could borrow either sheets or a bedspread to make a rope to go down through the skylight into the Corner Store; and that just before the police were called he had gone to the defendant's room, found the room empty and the window out onto the roof of the Corner Store open. In addition he informed the police that the defendant intended to take firearms from the Corner Store and would be well armed and possibly dangerous.

Three officers went to the defendant's room and entered after finding the door unlocked. Shortly thereafter they heard footsteps approaching the window. As the defendant crawled through the window, Officer Redfield grabbed him by the hair, put his service revolver against defendant's head and placed him under arrest. While the officers were securing him, the defendant spontaneously said, "Okay, you have got me."[1]

■■ The motion to suppress is based upon the contention that the police did not have probable cause to arrest the defendant at the time they entered his room. Probable cause justifying an arrest without a warrant exists where the facts and circumstances known to the

---

[1] There was a conflict in the evidence as to what the defendant actually said. Officer Redfield testified that the defendant said, "Okay, you have got me." Officer Haskins testified that the statement was, "You have caught me again."

arresting officer warrant a prudent man in believing that a felony has been or is being committed by the defendant. *Henry v. United States,* 361 US 98, 80 S Ct 168, 4 L Ed 2d 134, 138 (1959). The guidelines for determining whether the report of an informant is sufficient to establish probable cause were set forth in *Aguilar v. Texas,* 378 US 108, 84 S Ct 1509, 12 L Ed 2d 723 (1964). *Aguilar* requires that (1) the underlying circumstances or manner in which the informant obtained his information must be reliable, and (2) the underlying circumstances must establish that the informant is reliable or credible.

■ Mr. Lutz obtained the information which he reported to the police officers through conversations with the defendant and his own personal observations. The defendant told Mr. Lutz that he was going to "rob" the Corner Store. He later asked Mr. Lutz if he could borrow either sheets or a bedspread to make a rope to go down through the skylight into the Corner Store. Shortly before the police arrived Mr. Lutz checked defendant's room and found the room empty and the window facing the roof of the Corner Store was open. We believe that the manner in which Mr. Lutz got his information clearly satisfies the first requirement of *Aguilar*.

Defendant's argument is directed primarily toward the second requirement of *Aguilar,* namely, the circumstances from which the officers could conclude that Mr. Lutz was a reliable informant. It is clear that the officers had not previously dealt with Mr. Lutz, nor were they able to verify any of the details of his information. However, defendant's reliance on cases in which the reliability of an "unnamed police informant" was at issue is misplaced. In this case the informant informed the desk clerk of suspected criminal

activity; waited in the lobby for the police to arrive and identified himself to the police; and gave a factual, nonconclusionary report of information within his personal knowledge. Mr. Lutz was a citizen acting openly in aid of law enforcement. "[T]ests of reliability that must be applied to experienced stool pigeons do not necessarily apply to every private citizen who aids the police." *People v. Guidry,* 262 Cal App 2d 495, 497-98, 68 Cal Rptr 794 (1968). A substantial body of California precedent supports this distinction between "citizen-informers" and "police informants." *See, e.g., Krauss v. Superior Court of San Joaquin County,* 5 Cal 3d 418, 96 Cal Rptr 455, 487 P2d 1023 (1971); *People v. Hamilton,* 71 Cal 2d 176, 77 Cal Rptr 785, 454 P2d 681 (1969); *People v. Barrett,* 2 Cal App 3d 142, 82 Cal Rptr 424 (1969); *People v. Griffin,* 250 Cal App 2d 545, 58 Cal Rptr 707 (1967); and *People v. Lewis,* 240 Cal App 2d 546, 49 Cal Rptr 579 (1966). Although this distinction has never been articulated as a basis for establishing reliability in Oregon case law, we feel that it is a correct statement of the law of Oregon. In *State v. Albertson,* 1 Or App 486, 488, 462 P2d 458 (1969), Sup Ct *review denied* (1970), we said:

"* * * The hearsay information in the affidavit herein was not like that in *State v. Flores,* 251 Or 628, 447 P2d 387 (1968), where the informant was not identified. Here, the informant, with evidence in hand, was the named owner of the property."

Such a distinction is implicit in other cases. *See, e.g., State v. Hoover,* 219 Or 288, 347 P2d 69 (1959), where probable cause to arrest was held to be established solely on the report of a man that the defendant had threatened him with a gun, and *State v. Murphy,* 3 Or App 82, 471 P2d 863 (1970), where a woman informed

the police that she had arranged to purchase marihuana from the defendant. The police were waiting for the defendant when he arrived at her apartment to consummate the sale. Marihuana was found in a search of the defendant. We held that the information provided by the woman established probable cause for the search. No mention was made in either of these opinions of any verification of the reports or that the police had prior information as to the reliability of the informer.

■ A "citizen-informer," by rejecting the cloak of anonymity enjoyed by a "police informant," may expect to be called to testify after an arrest, and may be exposing himself to an action for malicious prosecution if he makes unfounded charges. We find that the reliability of Mr. Lutz was sufficiently established when he disclosed his identity and gave a detailed report of the facts within his personal knowledge which led him to believe that a burglary of the Corner Store by the defendant was in progress.

Under the facts of this case we conclude that the police officers had probable cause to arrest the defendant for the burglary of the Corner Store at the time they entered his room.

■ Defendant further contends that the evidence should have been suppressed because of the officers' failure to "knock and announce" as required by ORS 133.320. The information which the officers had at the time they entered the room gave them reason to believe that the defendant would be armed and possibly dangerous. In *State v. Vance*, 7 Or App 566, 492 P2d 493 (1971), we held that compliance with "knock and announce" requirements would be excused where the police had information which would lead them to rea-

sonably believe that compliance might increase their peril. Under the circumstances of this case the officers had good reason to believe that compliance with the "knock and announce" statute would increase their peril. We hold that their failure to comply with ORS 133.320 was justified.

■ In his next assignment of error the defendant contends that the trial court erred in finding that the spontaneous, unsolicited statement which he made at the time of his arrest was voluntary. He bases his contention on the fact that the defendant was unexpectedly confronted in his room by three policemen, one of whom held a revolver against his head. We find no substantial distinction between these facts and those in *State v. Pressel,* 2 Or App 477, 468 P2d 915, Sup Ct *review denied* (1970), where we found that the statement made by the defendant was voluntary. In any event, in view of the overwhelming evidence of guilt in this case, the admission of defendant's statement was beyond a reasonable doubt harmless error.

The assignment of error directed toward the denial of the motion for judgment of acquittal does not merit discussion.

Affirmed.